IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-01182-PAB

CHRISTINA L. PARKER,

      Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

      Defendant.
_____

**ORDER**
_____

      This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Christina L. Parker on May 19, 2016. Plaintiff seeks review of the final decision of defendant Nancy A. Berryhill (the "Commissioner") denying her claim for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 401-33 and 1381-83c.[1] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

      On November 7, 2011, plaintiff applied for supplemental security income under Title XVI of the Act.[2] R. at 59. Plaintiff alleged that she was disabled beginning November 7, 2011. *Id*. After an administrative denial, plaintiff appeared at an

---

      [1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

      [2] Plaintiff previously applied for supplemental security income on March 5, 2010. R. at 59. That application was denied. *Id.* Plaintiff's initial application is not at issue.

administrative hearing before an Administrative Law Judge ("ALJ") on December 12, 2012. *Id*. On December 17, 2012, the ALJ issued a decision denying plaintiff's claim. R. at 68. On April 24, 2014, the Social Security Appeals Council vacated this decision and remanded the case to the ALJ to address several evidentiary issues. R. at 74. In particular, the ALJ was instructed to:

> • Obtain additional evidence concerning the claimant's impairments.
>
> • Obtain evidence, if needed, from a medical expert to clarify the nature and severity of the claimant's impairments.
>
> • Further evaluate the opinion of Brett Valette, Ph.D., in Exhibit 3F and explain the weight given to such opinion.
>
> • Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms.

R. at 15; *see also* R. at 74. On remand, plaintiff appeared at an administrative hearing on September 29, 2014. R. at 15. On October 15, 2014, the ALJ again denied plaintiff's claim. R. at 24. The ALJ incorporated by reference portions of his first decision and added analysis on the issues that he was directed to address on remand. R. at 19 (incorporating listing analysis), 20 (incorporating RFC analysis to the extent it is not contradictory), R. at 24 (incorporating analysis of plaintiff's ability to perform jobs in the national economy). The ALJ found that plaintiff had the following severe impairments: (1) attention-deficit hyperactivity disorder (ADHD); (2) learning disorder; and (3) low intelligence. R. at 17. The ALJ found that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, *id*. at 18-19, and found that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations:

> • The claimant is able to work in jobs where the claimant is not required to undertake complex tasks, with complex tasks defined as a skill level that exceeds [specific vocational preparation level two].
>
> • The claimant is able to work in jobs where she does not have to utilize written instructions.
>
> • The claimant is able to work in jobs where she does not have to write reports.
>
> • The claimant is able to work in jobs where she does not have to handle money.

R. at 19-20. Based on this RFC and in reliance on the testimony given by a vocational expert ("VE") at the December 2012 hearing, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. R. at 23-24. On March 24, 2016, the Appeals Council denied plaintiff's request for review of the ALJ's decision. *Id*. at 1-3. Thus, the ALJ's October 2014 decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."
*Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B. The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the

4

evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C. The ALJ's Decision

Plaintiff argues that the ALJ erred by (1) failing to account for all of the limitations in the opinion of Dr. James Wanstrath, a state agency psychological consultant, despite giving it significant weight; (2) improperly assessing plaintiff's low IQ under the listings;

5

(3) failing to properly consider plaintiff's school records; (4) rejecting the medical opinion of Dr. Brett Valette, a clinical psychologist, without a valid reason; and (5) giving greater weight to the opinion of Dr. Wanstrath than to the opinion of Dr. Valette. *See* Docket No. 14 at 3. The Court will address only the first two of these arguments, which are dispositive. *Cf. Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

### 1. Dr. Wanstrath's Limitations

In 2011, Dr. Wanstrath reviewed plaintiff's records and provided a Mental Residual Functional Capacity Assessment ("MRFCA"). R. at 47-55. Three of the limitations discussed by Dr. Wanstrath are at issue on appeal.[3] First, he found that plaintiff is moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (the "schedule limitation"). R. at 54. Second, Dr. Wanstrath found that plaintiff is moderately limited in her ability to understand and remember detailed instructions, but stated in his MRFC finding that plaintiff could perform "[w]ork that can be learned from a short demonstration of how the job is done" (the "demonstration learning limitation"). R. at 53-54. Third, Dr. Wanstrath found that plaintiff is moderately limited in her ability to carry out detailed instructions and stated in his MRFC finding that plaintiff could perform

---

[3] Not raised on appeal, but relevant on remand, Dr. Wanstrath found that plaintiff is moderately limited in the ability to maintain attention and concentration for extended periods. R. at 53-54. Plaintiff did not raise this limitation on appeal, Docket No. 14 at 14-15, but it is also not incorporated or discussed in Dr. Wanstrath's narrative RFC findings or the ALJ's opinion.

6

"work involving repetitive performance of a minimal number of steps" (the "detailed performance limitation"). R. at 54. The ALJ gave significant weight to the opinion of Dr. Wanstrath. R. at 66. Plaintiff argues that the ALJ erred by failing to incorporate all of the work-related limitations Dr. Wanstrath identified into plaintiff's RFC or to explain their omission despite giving weight to Dr. Wanstrath's opinion. Docket No. 14 at 14-19. The Court addresses each limitation in turn.

### a. Schedule Limitation

As to the schedule limitation, the Commissioner argues that the ALJ was not required to consider the findings in Section I[4] of Dr. Wanstrath's opinion because they were not part of Dr. Wanstrath's narrative conclusions in Section III of the doctor's RFC determination. Docket No. 15 at 6.[5]

---

[4] The form used by Dr. Wanstrath does not identify a "Section I," instead referring to "MRFC1." R. at 53-54. The Commissioner notes that the form is analogous to the MRFCA forms discussed in other cases. *See* Docket No. 15 at 6. The Commissioner claims that there is "Section 3 of the form (here, labeled "MRFC3" [R. at 54])," Docket No. 15 at 6, but there is no section labeled MRFC3 and, instead, the narrative summary is labeled "MRFC - Additional Explanation." R. at 54. Plaintiff does not contest the Commissioner's form analogy and, accordingly, the Court uses the term "Section I" to refer to Dr. Wanstrath's preliminary findings, and "Section III" to refer to his narrative RFC conclusions listed as "MRFC - Additional Explanation." *See* R. at 53-54.

[5] The Commissioner argues that the schedule limitation should be disregarded because Dr. Wanstrath also indicated that plaintiff was "[n]ot significantly limited" in "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." R. at 54. However, the Commissioner's argument is based on quoting the relevant record as showing "Dr. Wanstrath found that [plaintiff's] 'ability to complete a normal workday and workweek' . . . was '[n]ot significantly limited.'" Docket No. 15 at 7 (quoting R. at 54). The Commissioner provides no argument or analysis explaining why a person's inability to follow a schedule is alleviated by the person's ability to work without unreasonable rest periods, and the Court rejects the Commissioner's argument.

7

Generally, Section I findings do not constitute a formal RFC assessment. *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished) (citing Program Operations Manual System (POMS) DI 25020.010). However, an ALJ cannot "turn a blind eye to moderate Section I limitations." *Id.* As the Tenth Circuit explained in *Carver,*

> if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding.

*Id.* The relevant question for the Court is whether Dr. Wanstrath's Section III narrative "adequately encapsulate[s]" his Section I findings. *Id.*

The Court finds that Dr. Wanstrath's narrative conclusion in Section III does not adequately encapsulate plaintiff's moderate schedule limitation in Section I. Although a claimant's ability to follow a schedule and be punctual is potentially related to the claimant's ability to learn from and follow detailed instructions in certain cases, neither Dr. Wanstrath nor the ALJ provided an explanation that reconciled plaintiff's moderate schedule limitation with the ALJ's ultimate conclusion regarding plaintiff's RFC, which omits the schedule limitation. Failing to account for a moderate limitation in this fashion is reversible error. *See Gorringe v. Astrue*, 898 F. Supp. 2d 1220, 1224 (D. Colo. 2012) (reversing the Comissioner's determination where "the ALJ still failed to explain how the moderate limitations, particularly that plaintiff would be moderately limited in her ability to maintain concentration and pace for extended periods and complete a normal work schedule, were consistent with the examiner's ultimate opinion, which POMS itself

8

requires."); *Baysinger v. Astrue*, No. 11-cv-00333-WYD, 2012 WL 1044746, at *4 (D. Colo. Mar. 28, 2012) (reversing the ALJ's decision where moderate limitations were not incorporated into the RFC because "selective application of Dr. Morrison's findings without explanation is error."). Accordingly, the Court finds that the ALJ erred by selectively incorporating the moderate limitations from Dr. Wanstrath's opinion into the ALJ's RFC finding.[6]

### b. The Demonstration Learning Limitation

Plaintiff argues that the ALJ's finding that plaintiff had an RFC that allowed jobs with a specific vocational preparation level two ("SVP-2") or less did not account for Dr. Wanstrath's limitation that plaintiff be able to learn jobs from a short demonstration. Docket No. 14 at 17. However, as the Commissioner argues, that error was harmless here because the ALJ based his disability determination on jobs that satisfy the demonstration learning limitation.

Pursuant to Department of Labor regulations, jobs with a specific vocational preparation level of one ("SVP-1") can be learned through a "short demonstration only," while SVP-2 jobs require "anything beyond [a] short demonstration up to and including 1 month" of training. *Specific Vocational Preparation*, *in Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, Appendix B (U.S. Department of Labor, 1993). In concluding that plaintiff is qualified to perform jobs that exist in substantial numbers in the national economy, the ALJ found that plaintiff could work as an automobile washer or a cleaner II (bus or airplane), both which are SVP-1

---

[6] The Commissioner does not argue harmless error with respect to the schedule limitation. Docket No. 15 at 6-7.

jobs. R. at 68. Such positions, in keeping with the definition of SVP-1, are necessarily jobs that can be learned from a short demonstration. Therefore, the ALJ's error in finding an RFC allowing for SVP-2 or less jobs (in spite of the demonstration learning limitation) was harmless because the ALJ's disability determination was based on plaintiff's ability to perform SVP-1 jobs that are consistent with the demonstration learning limitation. *See Chrismon v. Colvin*, 531 F. App'x 893, 900 (10th Cir. 2013) ("Any error . . . was therefore harmless because at least two of the four jobs identified by the VE are consistent with the [RFC].").

### c. The Detailed Performance Limitation

Plaintiff argues that the ALJ impermissibly ignored the detailed performance limitation and that it cannot be accounted for by a limitation to SVP-1 jobs. Docket No. 14 at 17-18; Docket No. 18 at 5. The Commissioner does not dispute that a limitation to SVP-1 jobs fails to incorporate the detailed performance limitation, but she argues that the ALJ "included greater limitations" by limiting plaintiff to "work that did not involve written instructions or require her to write reports or handle money." Docket No. 15 at 7. The Commissioner also argues that the ALJ is not required to "parrot a medical expert's opinion in assigning RFC limitations" and that any error was harmless. *Id*. n.5 (citing *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)).

The Court disagrees that the ALJ's limitations on reading, writing, and working with money can be understood as "greater" limitations than the detailed performance limitation. None of the additional limitations restricts plaintiff to work that is repetitive or features minimal steps. Moreover, the ALJ did not base these additional limitations on

the detailed performance limitation. In fact, the ALJ explicitly based these limitations on plaintiff's testimony that she could not perform specific tasks. R. at 65 ("The above residual functional capacity ('RFC') assessment includes restrictions on tasks that would involve reading instructions, writing reports, or handling money because the undersigned is satisfied claimant could not perform such tasks as she testified.").

The Commissioner's argument that the ALJ need not incorporate all limitations stated in a medical opinion into the RFC is unpersuasive in these circumstances because the ALJ did not provide any explanation for rejecting the detailed performance limitation. The ALJ afforded Dr. Wanstrath's opinion "significant weight," "adopt[ed] his findings," and found it "well explained and well supported by the totality of the evidence." R. at 62. Nonetheless, the ALJ did not provide an explanation for omitting the detailed performance limitation from the RFC or otherwise account for it. Instead, the ALJ explained that the evidence does not support going *beyond* Dr. Wanstrath's opinion, stating that the "additional evidence received at the hearing level – i.e., claimant's testimony at the hearing and records received from Spanish Peaks Mental Health Center and Pueblo Community Health Center (Ex's 7F and 8F) – do not establish that claimant is further limited[] mentally." In *Chapo*, the Tenth Circuit explained that it is error for an ALJ to "fully discount" some of a medical source's "mental RFC limitations with no explanation at all as to why one part of his opinion was creditable and the rest was not." 682 F.3d at 1292. Because the ALJ did so here, the Court finds that the ALJ erred by failing to explain his omission of the detailed performance limitation from the RFC.

Turning to the question of harmless error, the Court finds that the ALJ's error

11

was not harmless with respect to the detailed performance limitation because the ALJ's hypothetical to the VE was flawed. "The rule is well-settled that, where a hypothetical question fails to include 'all (and only) those impairments borne out by the evidentiary record,' a VE's testimony in response to it cannot provide substantial evidence to support an ALJ's findings regarding the work a claimant is able to perform." *Ruth v. Astrue*, 369 F. App'x 929, 931 (10th Cir. 2010) (unpublished) (quoting *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995)). The ALJ's questions to the VE did not include the detailed performance limitation and, therefore, the VE's testimony that plaintiff was capable of certain jobs did not account for all limitations that appear to be supported by the evidentiary record. *See* R. at 38-39. Because the ALJ failed to convey all of plaintiff's limitations, the VE's testimony does not provide substantial evidence that plaintiff is capable of performing the jobs that the VE identified. *See Chapo*, 682 F.3d at 1292 (finding reversal appropriate where the hypothetical posed to the VE was defective). It is a close question whether this error is harmless because the SVP-1 positions identified by the VE, namely, automobile washer or a cleaner II (bus or airplane), may not require a worker to carry out detailed instructions, but the Commissioner does not argue such a basis for harmless error and there is no evidence in the record concerning the requirements of these jobs. Accordingly, the Court finds that reversal is appropriate on the basis of the omission, without explanation, of the schedule limitation and the detailed performance limitation from the RFC and because of the hypotheticals posed to the VE.

### *2. Listings of Impairments*

The Court also finds that the ALJ's analysis of listing 12.05C would warrant reversal, but the Court will discuss this error only briefly because the applicable regulations changed while the parties' appellate briefs were being filed. *See Revised Medical Criteria for Evaluating Mental Disorders*, 81 FR 66138-01, 2016 WL 5341732 (Sept. 26, 2016). As a result of these changes, listing 12.05C was removed and replaced with new subparagraph criteria. *Id*. at 66167. The ALJ found that plaintiff did not meet listing 12.05C because he found her IQ scores "do not reflect her true cognitive functioning because they are not entirely consistent with other evidence of her adaptive functioning and lifestyle in the record" such as her ability to "maintain adequate activities of daily living, play video games, follow a story line, use a calculator, and use a computer for Facebook." R. at 64. As plaintiff argues, however, this analysis is inconsistent with the capsule definition of listing 12.05 that applied at the time, which required the ALJ to apply an accepted definition for "deficits in adaptive functioning" to determine whether plaintiff met the listing. *See Barnes v. Barnhart*, 116 F. App'x 934, 942 (10th Cir. 2004) (unpublished) (discussing 67 Fed. Reg. at 20,022). The accepted definitions look to whether an individual is limited in a number of skill areas, *id*., rather than looking to an individual's general level of functioning as the ALJ did. *See* R. at 64. The ALJ should consider the new criteria for listing 12.05 on remand. *Id*. (remanding for consideration under guidance issued during the pendency of the appeal).

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

DATED September 21, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge